PASCASIO OXÍOS Y ORTIZ, Appellant, v. REGISTRAR OF PROPERTY OF PONCE, Respondent.—JOSÉ ACOSTA Y VALENCIANO, Appellant, v. REGISTRAR OF PROPERTY OF PONCE, Respondent.

Nos. 726 and 725. Submitted June 23, 1928.—Decided April 8, 1929.

*Herminia* and *Leopoldo Tormes* for the appellants. The registrar did not appear.

Mr. Justice Wolf delivered the opinion of the court.

José Acosta y Valenciano and Pascasio Oxíos y Ortiz, in Ponce, on the 12th of March, 1924, formed a regular collective partnership. No other person formed a part of said firm. Each of the named persons was a managing partner of the firm and there was no other partner of any kind.

On the 28th day of February, 1928, in the name of the firm Pascasio Oxíos y Ortiz, as managing partner, conveyed to the other partner, José Acosta y Valenciano, some of the real estate belonging to the said firm. On the same day the said José Acosta y Valenciano, as managing partner, conveyed to the other partner, Pascasio Oxíos y Ortiz, some other part of the real estate of the said firm. It was a symmetrical, reciprocal operation by which certain real estate of the partnership firm was attempted to be transferred or was actually transferred from the firm to these two persons, each of whom was a managing partner, and there were no other partners.

In each case the registrar denied record to the deed of conveyance in the note, the substantial part of which in case No. 725 reads as follows:

"The record of the foregoing document is hereby denied because it appears that the vendee is one of the managing partners of the firm of Oxíos & Acosta, the grantor herein, and as provided by paragraph 1, section 1597, of the Civil Code all the partners shall be considered agents. Paragraph 2 of section 1362 of the said Code prohibits agents from acquiring the property whose management or alienation has been entrusted to them, and it appears in this case that the grantee is acquiring by purchase three pieces of property belonging to the grantor Oxíos & Acosta, Mr. Oxíos, the grantee, being also managing partner thereof; in its stead a cautionary notice of 120 days is taken, as indicated by the notes entered at the margin of the

respective properties, which latter are not subject to any encumbrances.''

Section 1362 of the Civil Code provides:

''The following persons can not acquire by purchase, even at public or judicial auction, neither in person nor by an agent;

''1. The guardian, the property of the person or persons who may be under his guardianship.

''2. Agents, the property the administration or sale of which may have been intrusted to them.

''3. Executors, the property intrusted to their care.

''4. Public officials, the property of The People of Porto Rico, municipalities, towns and also of public institutions, the administration of which has been intrusted to them.

''This provision will apply to judges and experts who, in any manner whatsoever, take part in the sale.

''5. Judges, members of the department of public prosecution, clerks, of superior and inferior courts, and officials of justice, the property and rights in litigation before the court in the jurisdiction and territory over which they exercise their respective duties, this prohibition including the act of acquiring by assignment.

''From this rule shall be excepted the cases in which hereditary actions among coheirs are involved, or assignments in payment of debts, or security for the goods they may possess.

''The prohibition contained in this number shall include the lawyers with regard to the property and rights, which may be the object of the litigation, in which they may take part by virtue of their profession and office.''

For the moment we shall accept with the registrar and the appellants that a managing partner of a firm is or may be one of the agents who falls under the sanction of section 1362. With respect to the firm management he is surely endowed with all the faculties of an attorney in fact.

The appellant in each case, however, insists that the only persons interested are the two partners who appeared in the deed accompanied by their respective wives; that what they were attempting to do was to reduce some of the capital of the firm; that each of the said partners would be estopped to deny the validity of the transfer and neither could ask for

a cancellation; that to interpret the section as does the registrar would make section 1362 unconstitutional because it would lead to absurd results, citing *Church of the Holy Trinity* v. *U. S.*, 143 U. S. 457. The appellants cite various cases to show that where a construction would lead to absurd results any reasonable one should be accepted that would preserve rather than destroy a law. Citing from various commentaries of Manresa, the appellants say or concede in effect that if one of the partners objected a transfer of this sort could not be made, but here all the interested parties are consenting. There is force in all this reasoning.

More particularly the appellants say that in each case it is the firm that is selling and that therefore the particular transaction should not be considered as one where an agent is acquiring the property of his principal. We think the appellants are right. In *Ledesma* v. *Agrait*, 19 P.R.R. 541, we held that some of the sales in violation of section 1362 were merely voidable and that then the principal, after a full disclosure, might ratify the act of his agent.

For convenience of treatment we shall consider chronologically some of the cases of this court which have discussed similar principles.

In *Alvarez* v. *Riera*, 20 P.R.R. 308, José Dimas Riera, as attorney in fact of his firm, sold all the rights and actions. The object of the suit was to annul the document and the court below said that the action had prescribed because of the four year limitation expressed in section 1268 of the Civil Code, and we held, citing *Ledesma* v. *Agrait, supra*, that the prohibition of the law made the contract merely revocable and therefore could be ratified. We held further, citing from the Supreme Court of Spain, that an action to annul was necessary.

*Cortijo* v. *Registrar of Property*, 21 P.R.R. 465, was a case where we held that the cancellation of a mortgage made by a husband was absolutely valid as to him and his heirs, but might be ratified by the wife. After citing the principles

set forth in the *Ledesma Case,* we decided that if a contract partakes of all the conditions set forth in section 1228 of the Civil Code it is, barring certain exceptions, not absolutely void. We held that the prohibition of section 1362 of the Civil Code was as strong as the prohibition contained in section 1328. *Quiñones* v. *Registrar of Property,* 20 P.R.R. 474, and *Caballero* v. *Pomales,* 17 P.R.R. 691, were other cases cited in the *Cortijo Case* to the effect that voidable acts of a tutor or of a husband could be ratified.

*Carrasquillo* v. *Bertrán,* 26 P.R.R. 516, was a case of the contract of a minor. After holding that only the minor can bring suit against the grantee for the annulment of the contract, the court said: "But if instead of doing this he voluntarily acknowledges the validity of the act and ratifies it after he becomes of age, such ratification is all that is necessary to validate the voidable contract, according to sections 4, 1228, 1277 and 1278 of the Civil Code," citing authorities.

In *Silva Brothers* v. *Registrar of San Juan,* 28 P.R.R. 164, we said, in discussing the sale of a principal to an agent:

". . . but in any event the purchase is not null and void under subdivision 2 of section 1362 of the Civil Code, because, as this court said in *Mancheño* v. *Le Brun et al.,* 14 P.R.R. 461, in considering a sale made by a principal to his agent, 'from the moment that the principal sells such property to his agent the agency given ceases and he recovers the power to sell and administer which he had granted, the legal ground for the incapacity disappearing.' That prohibition of law has always been construed strictly because it tends to restrain the freedom of contracting. The contract is ratifiable and the action to obtain its nullity can be barred by limitation, and twenty-seven years have elapsed since the contract here involved was executed. *Bengoa* v. *Registrar of Property,* 14 P.R.R. 105; *Ledesma et al.* v. *Agrait et al.,* 19 P.R.R. 541; *Turner* v. *Registrar of San Juan,* 22 P.R.R. 535; *Seoane* v. *Registrar of Caguas,* 23 P.R.R. 753; *Castelló et al.* v. *Pérez et al.,* 23 P.R.R 709."

*Mancheño* v. *Le Brun et al., supra,* was an important case written by Mr. Justice Figueras, and we held:

"We have already seen that Paz, with legal capacity and on behalf of Sucesores de L. Sarria, sold such property to Le Brun by public deed of April 22, 1904, and from the moment that the principal sells such property to his agent the agency given ceases and he recovers the power to sell and administer which he had granted, the legal ground for the incapacity disappearing, such incapacity consisting according to Mucius Scaevola, volume 23, p. 403, in that the agent forms with the principal a 'single juridical person, and if such prohibition to purchase did not exist the result would be that agents would be enabled to sell to, and purchase from, themselves the same thing, the characters of vendor and vendee in a contract of purchase and sale thus disappearing and becoming merged in each other.' "

*Just* v. *Just,* 32 P.R.R. 229, involved the question of voidable marriages. We held that the marriage in that case might be ratified just as in the case of a pupil who married a tutor before the accounts are approved.

*Vargas* v. *Cruz,* 32 P.R.R. 25, was a case where we decided that the contract in question could not be ratified because of the policy of the law. We cited *Ledesma* v. *Agrait, supra,* and said that whether or not a contract may be ratified depended upon the nature of the contract.

From these citations it is evident that whether or not a contract may be ratified, or even recorded, depends upon the essential nature of the contract. Specifically we have held that where a principal sells to the agent the contract not only is ratified but that the prohibition vanishes; that the agency no longer exists. Not only *Ledesma* v. *Agrait* but all the other cases show that the prohibition contained in section 1362 is not absolute. The contract before us is one in which everybody concerned has consented.

Section 1360 of the Civil Code provides:

"A contract of purchase and sale may be executed by all persons who, according to this Code, are authorized to bind themselves, excepting the modifications contained in the following sections."

Section 1597, subdivision 1, provides:

"All the partners shall be considered agents, and whatever any one of them may do by himself shall bind the partnership; but each

one may oppose the act of the others before they may have produced any legal effect.''

Any partner, therefore, may sell unless he is prohibited by section 1362. The partner who is selling is the agent or attorney in fact who is acting by virtue of section 1597(1). The prohibition of section 1362, therefore, extends to him. He is the person contemplated by section 1597(1). The partner who is acquiring is not an agent of the firm under section 1597(1) because he is doing no act in the name of the firm.

The spirit of section 1597(1) is to give life to the firm and to make it responsible to the outside world for any of the acts of its managing partners. There is nothing in that section that makes it wrong for a partner to acquire firm property with the consent of all the partners. If section 1362 be examined it will be noticed that its spirit is to prevent frauds and in the particular case to protect principals or the public from tortious acts of their agents. It never was the intention of the Legislature to prevent a firm, when all the partners consent, from doing what it deemed best for its own interests and in any form, as contemplated by section 1360, *supra*. There is no suggestion of fraud and the public registries should not be closed because of such a possibility.

Under section 2 of the Mortgage Law all transfers of property should be recorded. The firm in question here is completely estopped as against either of the individual partners to deny such transfer. There is no public interest which is paramount to the rights of individuals to make their own contracts. Section 4 of the Civil Code makes all rights subject to renouncement. Barring questions of fraud, no one in the world has the right to question the validity of the transfer made in this case.

The mere possibility of a conveyance in possible fraud of creditors is not sufficient to prevent a record. The fraud does not appear on the face of the document and the registrar does not base his refusal on the ground of fraud. If the

possibility of a fraudulent conveyance was a reason for refusing record, then the most innocent transfer by a merchant or otherwise might be subject to delays and refusals. Fraud is never presumed, but the presumption is that a contract is a fair one.

In addition to the possibility that such a strict interpretation of section 1362 would lead to absurd results, there is also the principle that the alienation of property should be unrestricted until a reason to the contrary appears.

If either of these partners brought a suit in the district court to compel the firm to acknowledge the title, no one could be heard in opposition to the suit. No one would have sufficient interest to oppose it. It would seem beyond dispute that if a contract void for the lack of the consent of parties may be ratified, then a contract may be made by all the parties intervening directly.

The note should be reversed.

Mr. Justice Texidor dissented.

### DISSENTING OPINION OF MR. JUSTICE TEXIDOR

I dissent from the opinion and judgment in these two cases.

Section 1362 of the Civil Code establishes an incapacity to purchase. It is not a matter of general incapacity to contract, but of special incapacity to enter into a contract of purchase and sale and refers very specifically not to the two contracting parties, but to the possible purchaser alone.

In my opinion there is no doubt that the managing partner of a civil or mercantile partnership is its agent. Hence the affirmation that he is included in the incapacity to purchase the property which is under his management. The statute establishing the incapacity reads:

"Sec. 1362. The following persons can not acquire by purchase, even at public or judicial auction, neither in person nor by an agent:
" * * * * * * *
"2. Agents, the property the administration or sale of which may have been intrusted to them."

Not even under the solemnity of a judicial auction can the the agent acquire that kind of property by purchase.

Perhaps in case of a purely voluntary contract of agency the fact that the principal sells to his agent may give to the latter the capacity to purchase. According to section 1635 of the Civil Code, the agency may be revoked at the will of the principal. If the principal does not desire to be represented in an act or contract and regains his legal personality to effect it, it is unquestionable that while he is performing the act, or perfecting or consummating the contract, there is no justification for his being represented by another person, and then the agent has ceased to be such and the incapacity to purchase which is based exactly on that character and on the fact that he is managing that property disappears, because both bases have disappeared—his character as agent and his control over the property.

But in this case the management of the mercantile or civil partnership is not something created exclusively by the will of the parties; but the agency is determined by law, inasmuch as no partnership can exist without managers or administrators. And that agency does not create only a relation between the partners, but a multitude of relations as regards third persons. The agency here is not terminated as in the case referred to, but only in the event of dissolution of the partnership and the removal of the managers. Otherwise, the manager and administrator of a partnership is always its agent, and in that capacity he can not acquire by purchase property intrusted to his management.

The reference in section 1362 to "the property the administration or sale of which may have been intrusted to them" is very important. The management of that property is one of the main grounds of the incapacity. While the property is under the management of the managing partners they can not acquire it. The partnership, as a legal entity, shall have the ownership or possession of that property, but can manage it only through the managing partners.

The sales involved in these cases are void for the lack of purchasers, for the apparent purchasers are not lawful purchasers.

The decisions appealed from should be affirmed.